FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 29, 2020

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

BARBARA DAVIS, as Personal Representative of the Estate of G.B., deceased,

Plaintiff,

v.

JENNIFER STRUS, individually and in her official capacity acting under the color of state law; HEIDI KAAS, individually and in her official capacity acting under the color of state law; MELISSA KEHMEIER, individually and in her official capacity acting under the color of state law; JAMES DESMOND, individually and in his official capacity acting under the color of state law; CASSIE ANDERSON, individually and in her official capacity acting under the color of state law; BRINA CARRIGAN, individually and in her official capacity acting under the color of state law; MAGGIE STEWART, individually and in her official capacity acting under the color of state law; LORI BLAKE, individually and in her official capacity acting under the color of state law; SHANNON SULLIVAN, individually and in her official capacity acting under the color of state law; SUSAN STEINER, individually and in her

No. 2:17-cv-00062-SMJ

**ORDER GRANTING IN PART AND DENYING IN PART INDIVIDUAL STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

official capacity acting under the color of state law; CAMERON NORTON, individually and in his official capacity acting under the color of state law; SARAH OASE, individually and in her official capacity acting under the color of state law; RANA PULLOM, individually and in her official capacity acting under the color of state law; DONALD WILLIAMS, individually and in his official capacity acting under the color of state law; CHRIS MEJIA, individually and in his official capacity acting under the color of state law; RIVERSIDE SCHOOL DISTRICT NO. 416, a Municipal Corporation duly organized and existing under the laws of Washington State; JUANITA MURRAY, individually and in her official capacity acting under the color of state law; ROBERTA KRAMER, individually and in her official capacity acting under the color of state law; SARAH RAMSDEN, individually and in her official capacity acting under the color of state law; CAROLINE RAYMOND, individually and in her official capacity acting under the color of state law; CHERI MCQUESTEN, individually and in her official capacity acting under the color of state law; SARAH RAMSEY, individually and in her official capacity acting under the color of state law; TAMI BOONE, individually and in her official capacity acting under the color of state law; MELISSA REED, individually and in her official capacity acting under the color of state law; ANN STOPAR, individually and in her official capacity

acting under the color of state law; KRISTINA GRIFFITH, individually and in her official capacity acting under the color of state law; WENDY SUPANCHICK, individually and in her official capacity acting under the color of state law; SHERRY DORNQUAST, individually and in her official capacity acting under the color of state law; GARY VANDERHOLM, individually and in his official capacity acting under the color of state law; ROGER PRATT, individually and in his official capacity acting under the color of state law; CHRIS NIEUWENHUIS, individually and in his official capacity acting under the color of state law; and JOHN DOES 1–50, individually and in their official capacities acting under the color of state law,

Defendants.

Before the Court, without oral argument, is the Individual State Defendants'[1] Motion for Summary Judgment, ECF No. 359. The Individual State Defendants seek summary judgment on Plaintiff's negligence claims related to the death of Plaintiff's grandchild, G.B. *Id.* Plaintiff opposes the motion as to Defendants Sarah Oase and James Desmond, two of the fourteen Individual State Defendants. ECF

[1] The Individual State Defendants include Cassie Anderson, Lori Blake, Brina Carrigan, James Desmond, Melissa Kehmeier, Chris Mejia, Cameron Norton, Sarah Oase, Rana Pullom, Susan Steiner, Maggie Stewart, Jennifer Strus, Shannon Sullivan, and Donald Williams. ECF No. 359 at 1 n.1.

No. 376 at 2. Having reviewed the motion and the file in this matter, the Court is fully informed. For the reasons that follow, the Court grants in part and denies in part the motion.

## BACKGROUND[2]

This case arises out of the tragic death of G.B., a minor child, in April 2015 while in the custody of his aunt. *See* ECF No. 1 at 13–14. Following the death of his parents, G.B. and his siblings became dependents of the State of Washington. *Id.* at 12–13. In early September 2014, G.B. and his younger brother were placed in the care of their paternal aunt, Cynthia Khaleel, who lived in Chattaroy, Washington. ECF No. 218-4 at 10, 24–35.

During the 2014–15 school year, staff and teachers at the elementary school G.B. was attending observed numerous signs that G.B. may have been suffering abuse and neglect, and on December 12, 2014, school counselor Tiffany Zuck submitted a report to the Washington Department of Social and Human Services ("DSHS") indicating that she believed G.B. and his siblings were being abused at home. ECF No. 135-9 at 4. DSHS social worker Brina Carrigan investigated the

[2] The detailed factual background of G.B.'s death has been set forth in multiple prior orders, see ECF Nos. 221, 281 & 368, and the Court finds it unnecessary to repeat that general background in full here. Because the contested issues pertain primarily to the actions of Sarah Oase and James Desmond, the Court focuses on Oase and Desmond's involvement with G.B.'s placement.

referral and ultimately closed it as unfounded. ECF No. 218-2 at 3–4; ECF No. 218-4 at 3–4.

Heidi Kaas was G.B.'s primary social worker in 2014 and was involved in G.B. and his younger brother's placement. ECF No. 218-10 at 4. Sarah Oase served as Kaas's direct supervisor until August 30, 2014. ECF No. 382 at 2. Jeremy Kirkland served as Kaas's supervisor from September through December 2014. ECF No. 218-3 at 4, 22–23. In an October 2014 review of Kaas's work, Kirkland raised concerns about the accuracy of Kaas's reporting because the times she noted for some health and safety visits were not possible given distances between the locations of those visits. *Id.* at 28. Kaas stated that these must have been errors, and Kirkland accepted this explanation. *Id.* at 29. In a November 2014 meeting with Kaas, Kirkland noticed that Kaas had documented seeing G.B. in Chattaroy on the same day she documented seeing another child in Port Angeles. *Id.* at 4–5, 26–27, 33–34. Confronted with this inconsistency, Kaas admitted falsifying these records. *Id.* at 5, 34. Kirkland notified his supervisors of Kaas's admission, and they opened an investigation. *Id.* at 5, 34–35.

Susan Steiner replaced Kaas as G.B.'s primary social worker in December 2014. ECF No. 218-12 at 3. Because no home study had been conducted on Khaleel's home, she also requested that the Spokane office of DSHS conduct a home study. *Id.* at 4. Social worker James Desmond conducted a home study of

Khaleel's home in late January 2015. ECF No. 218-5 at 3. During this visit, he observed G.B., G.B.'s brother, and Khaleel's other children, and he watched Khaleel interact with them. *Id.* at 4. Desmond stated G.B. seemed to be happy and healthy. *Id.* He also spoke by phone to Khaleel's husband, who was in the military and stationed in Kansas. *Id.* at 4. Desmond did have several concerns, which he reported to Steiner, including that Khaleel reported a good childhood despite six CPS referrals about her as a child; a 2008 referral against the Khaleels alleging that their two-year-old child was found alone outside the home; the stability of the Khaleel marriage; Khaleel's hesitancy to discuss issues concerning the paternity of her youngest son; and whether a background check had been completed on Khaleel's parents, whom she said helped her care for the children. *Id.* at 5–6.

Desmond and his supervisor, Nancy Sundin, went to Khaleel's home in March 2015. ECF No. 218-5 at 5. During this visit, the children were asleep, and Desmond discussed his draft report with Khaleel and gave her background check forms for her parents to complete. *Id.* Desmond returned again to the Khaleel home to meet with Mr. and Ms. Khaleel on April 9, 2015. *Id.* He observed that the home was in good condition with no visible safety concerns. *Id.* At this time Khaleel had not completed the required forms and Desmond advised her that if she failed to do so by the end of April, he would consider closing the home study without approval. *Id.*

On April 17, 2015, emergency medical providers arrived at the Khaleel residence and discovered G.B. in an unresponsive state. ECF No. 1 at 13. He was taken to Sacred Heart Medical Center, where medical staff discovered multiple skull fractures and traumatic brain injuries. *Id.* G.B. died from these injuries the following day. *Id.* at 14. The Spokane County Medical examiner determined that G.B.'s cause of death was a blunt force head injury and ruled the death a homicide. *Id.* G.B. also sustained multiple other traumas, including an abdominal injury that was the result of a forceful blow. *Id.* Khaleel was arrested in July 2015 and charged with second-degree murder. *Id.* Desmond completed his home study after G.B.'s death, recommending the home not be approved for placement of any children by DSHS. ECF No. 218-5 at 6.

On September 14, 2016, G.B.'s grandmother, on behalf of G.B.'s Estate and the Estate's statutory beneficiaries, brought this action against the Washington State Department of Social and Health Services ("DSHS") and the Riverside School District, along with numerous employees of those entities. ECF No. 1. The procedural history of this case, including ten prior motions for complete or partial summary judgment, is substantial. *See* ECF Nos. 105, 144, 151, 157, 218, 226, 236, 239, 347, 359 & 361. The Individual State Defendants filed this motion solely as to Plaintiff's negligence claims. ECF No. 359.

## LEGAL STANDARD

The Court must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In ruling on a summary judgment motion, the Court must view the evidence in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). Thus, the Court must accept the nonmoving party's evidence as true and draw all reasonable inferences in its favor. *See Anderson*, 477 U.S. at 255. The Court may not assess credibility or weigh evidence. *See id.* Nevertheless, the nonmoving party may not rest upon the mere allegations or denials of its pleading but must instead set forth specific facts, and point to substantial probative evidence, tending to support its case and showing a genuine issue requires resolution by the finder of fact. *See Anderson*, 477 U.S. at 248–49.

## DISCUSSION

### A. Objections to Reply

After the Individual State Defendants filed their reply, Plaintiff filed an

objection, asking the Court to strike pages four through six of the reply. ECF No. 383. Specifically, Plaintiff alleged the Individual State Defendants' arguments that Oase and Desmond did not owe G.B. a duty of care were raised for the first time in their reply. *Id.* at 1. The Individual State Defendants responded to the objection, asserting they had raised the arguments in the original motion and that, even if the original summary judgment motion did not raise the issue of duty, Plaintiff's responsive pleadings expressly claim that Oase and Desmond owed G.B. a legal duty, and so the Individual State Defendants were entitled to respond to that argument. ECF No. 385 at 1–2.

The Individual State Defendants briefed the legal standards applicable to the duty, breach, and causation elements of negligence in their motion for summary judgment. ECF No. 359 at 4–7. However, in each of the fourteen sections devoted to individual Defendants, the Individual State Defendants used general language regarding Plaintiff's failure to meet her burden. *See id.* at 7–15. For example, as to Oase, the motion states Plaintiff cannot "present sufficient competent evidence that (1) Oase personally committed a negligent act or omission with regard to the investigation of allegations of abuse or neglect, or G.B.'s placement with Kahleel, and (2) that any alleged negligent act or omission by Oase was a proximate cause of the injuries being claimed by the Estate." *Id.* at 12–13. Similarly, for Desmond, the motion states Plaintiff cannot "present sufficient competent evidence that (1)

Desmond personally committed a negligent act or omission with regard to the investigation of allegations of abuse or neglect, or G.B.'s placement with Kahleel, and (2) that any alleged negligent act or omission by Desmond was a proximate cause of the injuries being claimed by the Estate." *Id.* at 15.

Although the Individual State Defendants' motion is not perfectly clear as to whether they were challenging both the existence of a duty and the breach of that duty, the Court understands "committed a negligent act or omission" to mean both the duty and breach. As such, the Court denies Plaintiff's objection regarding whether Oase and Desmond owed G.B. a duty of care. Given Plaintiff's misunderstanding of the motion, the Court would ordinarily permit supplemental briefing on the issue of duty. However, because the Court finds Defendants have failed to show that there no genuine issue of material fact exists as to each of the elements of Plaintiff's negligence claims, summary judgment is not appropriate and no further briefing is necessary.

**B. Mejia, Norton, Strus, Sullivan, Williams, Anderson, Blake, Kehmeier, Pullom, Stewart, Carrigan, and Steiner**

Plaintiff has not responded to the motion for summary judgment as to Defendants Mejia, Norton, Strus, Sullivan, Williams, Anderson, Blake, Kehmeier, Pullom, Stewart, Carrigan, and Steiner. *See* ECF No. 376. Nor has Plaintiff identified any facts that would support Plaintiff's claim of negligence against these

Defendants.[3] *See* ECF No. 375. As such, summary judgment is granted as to the negligence claims against Defendants Mejia, Norton, Strus, Sullivan, Williams, Anderson, Blake, Kehmeier, Pullom, Stewart, Carrigan, and Steiner.

**C. Negligence claims against Sarah Oase and James Desmond**

The Individual State Defendants assert Plaintiff "cannot establish that Defendant Sarah Oase breached a duty owed" and that "[t]here is a complete lack of evidence to support claims of negligence against James Desmond." ECF No. 359 at 12, 14. Plaintiff argues that issues of material fact preclude summary judgment as to these Defendants. ECF No. 376 at 2.

The elements of a negligence claim are duty, breach, causation, and damages. *Hansen v. Friend*, 824 P.2d 483, 485 (Wash. 1992). Under Washington common law, DSHS is subject to both a common law and statutory duty of care. *See M.W. v. Dep't of Soc. & Health Servs.*, 70 P.3d 954, 959–60 (Wash. 2003). "DSHS owes a duty of reasonable care to protect foster children from abuse at the hands of their foster parents." *H.B.H. v. State*, 429 P.3d 484, 487 (Wash. 2018).

---

[3] Plaintiff notes that she does not dispute or has no knowledge of certain facts related to Carrigan, Anderson, and Stewart and raises hearsay and foundation objections to fact in the Individual State Defendants' Statement of Material Facts Not In Dispute related to Carrigan. ECF No. 375 at 18, 21–23. Plaintiff also mentions that Carrigan found reports in a database Oase was able to access and that Steiner as the recipient of certain emails from Defendant Desmond. *Id.* at 10, 12, 13. However, none of these facts support a finding that Carrigan, Anderson, Stewart, or Steiner acted negligently.

Washington courts also recognize that the obligation to investigate under Revised Code of Washington § 26.44.050 "implies a cause of action for children and parents for negligent investigation in certain circumstances." *M.W.*, 70 P.3d at 957 (quoting *Tyner v. Dep't of Soc. & Health Servs.*, 1 P.3d 1148, 1154–55 (Wash. 2000)). This implied duty requires DSHS to act reasonably when investigating reports of child abuse or neglect. *Tyner*, 1 P.3d at 1155. The duty is triggered when DSHS receives a report of previous or existing abuse or neglect, but not on receipt of allegations of potential future neglect. *Wrigley v. State*, 455 P.3d 1138, 1144 (Wash. 2020).

Thus, a child, parent, or guardian may assert a claim for negligent investigation where "DSHS has gathered incomplete or biased information that results in a harmful placement decision, such as removing a child from a nonabusive home, placing a child in an abusive home, or letting a child remain in an abusive home." *M.W.*, 70 P.3d at 960.

There are two elements of proximate cause: cause in fact and legal causation. *Tyner*, 1 P.3d at 1155–56. Cause in fact exists when "but for" the defendant's actions, the Plaintiff would not have been injured. *Id.* at 1156. This is typically a factual question presented to a jury, but it may be resolved as a matter law where a reasonable jury could reach only one conclusion. *H.B.H.*, 387 P.3d 1093, (Wash. Ct. App. 2016) *aff'd* 429 P.3d 484, 487 (Wash. 2018). "Mere speculation or

argumentative assertion of possible counterfactual events is insufficient to prove that but for the defendant's breach of duty, the plaintiff would not have been injured." *Id.*

The Individual State Defendants assert Plaintiff cannot "present sufficient competent evidence that (1) Oase personally committed a negligent act or omission with regard to the investigation of allegations of abuse or neglect, or G.B.'s placement with Kahleel, and (2) that any alleged negligent act or omission by Oase was a proximate cause of the injuries being claimed by the Estate." ECF No. 359 at 12–13. As to Desmond, the Individual State Defendants assert Plaintiff cannot "present sufficient competent evidence that (1) Desmond personally committed a negligent act or omission with regard to the investigation of allegations of abuse or neglect, or G.B.'s placement with Kahleel, and (2) that any alleged negligent act or omission by Desmond was a proximate cause of the injuries being claimed by the Estate." ECF No. 359 at 15.

**1. Duty of Care**

As to whether Oase or Desmond owed G.B. a duty of care, the Individual State Defendants presented no particularized argument asserting that no duty of care arose under statutory or common law. *See* ECF No. 359 at 12–13, 14–15. In their reply, the Individual State Defendants argue Plaintiff has failed to "bring forth sufficient, competent evidence to establish either Ms. Oase or Mr. Desmond

individually became legal custodians of G.B. or personally assumed the responsibility to ensure his safety." ECF No. 379 at 5. However, the Individual State Defendants have not briefed the legal issue of whether individual employees must take specific steps to become legal custodians in order to trigger their duties under statutory or common law.[4] The Court declines to make such a legal determination where the issue has not properly been presented to the Court.

It is uncontested that Oase served as a social worker supervisor and directly supervised Heidi Kaas between 2012 and August 30, 2014. ECF No. 382 at 2. It is also undisputed that Desmond was a social worker and was assigned to complete a home study of Khaleel's home in January 2015. *Id.* The Individual State Defendants also do not contest that "the State of Washington, through DSHS, owes a duty to dependent foster children." ECF No. 379 at 6. The Individual Defendants cite evidence supporting their statement that Oase had no direct involvement in G.B.'s dependency or the decision to place him in Khaleel's home. ECF No. 360 at 6.

---

[4] The Individual State Defendants cite *H.B.H. v. State*, 429 P.3d 484, 496 (Wash. 2018), and *C.L. v. State Dep't of Soc. & Health Servs.*, 402 P.3d 346, 350 (Wash. 2017), to support the proposition that "[w]hile the State of Washington, through DSHS, may owe dependent foster children a duty in tort neither decision supports the imposition of either duty on an individual DSHS employee that has not individually assumed the legal custody or the responsibility for the safety of a dependent child." ECF No. 379 at 5. However, these cases indicate that the special relationship between DSHS and dependent children as the basis for a duty in tort, neither case directly addresses the issue of when such a duty arises for individual DSHS employees. *See H.B.H.*, 429 P.3d at 496; *C.L.*, 402 P.3d at 350.

However, Plaintiff cites evidence showing that Oase endorsed G.B.'s placement in the Khaleel home without a home study. ECF No. 375 at 20. Thus, the Individual State Defendants have failed to show there is no dispute over material fact as to whether Defendants Oase and Desmond owed G.B. a duty of care.

**2. Breach of Duty and Causation**

As to Oase, the Individual State Defendants assert that "Oase served as a social worker supervisor for the Department and was assigned to supervise social worker Heidi Kaas starting in 2012, but ending in August 2014" and that "Oase conducted her supervisory reviews with Kaas and had no reason to question Kaas's representations and documentation of the services being provided by Kaas." ECF No. 359 at 12. As to Desmond, the Individual State Defendants assert that "Desmond served as a social worker and was assigned to conduct a home study of Kahleel's home in January 2015" and that "he immediately started the home study, gathered relevant information, raised concerns as they arose, and participated in staffings regarding the on-going home study until the time of G.B.'s death." ECF No. 359 at 14.

However, Plaintiff's claim against Oase is grounded in Oase's failure to ensure a home study was conducted *before* G.B. was placed in the Khaleel home, her failure to inform the Spokane DSHS office that G.B. was being placed in the Spokane DSHS's geographic area, her failure to request courtesy supervision, and

that there was no basis to place G.B. with Khaleel as an urgent placement. ECF No. 376 at 3–4. Plaintiff has identified evidence that Oase, as Kaas's supervisor, was responsible for arranging for a social worker to conduct a home visit and did not do so and that Oase failed to contact the Spokane office of DSHS as required to notify them of G.B.'s placement in their area or establish courtesy supervision. ECF No. 375 at 3, 6–7, 11, 20.

Similarly, Plaintiff's claims against Desmond are grounded in his alleged failure to complete the home study on an expedited basis despite the fact that he knew of concerns about G.B.'s welfare and the fact that a home study should have been completed prior to his assignment to the case. ECF No. 376 at 4. Plaintiff has identified evidence that, even with an urgent placement, DSHS policy required a home study to have been completed within 120 days of G.B.'s placement. ECF No. 240-25 at 19. The parties do not dispute that Desmond was assigned to complete the home study in January 2015. ECF No. 382 at 2. Because G.B. was legally placed with Khaleel on September 3, 2014, Desmond's assignment was necessarily at least 120 days after G.B.'s placement. *See* ECF No. 241 at 14.

Plaintiff has also shown evidence that the Khaleel home study was not likely to be approved, even excepting her failure to submit required paperwork. ECF No. 240-15 at 4; ECF No. 240-12 at 7–9. Thus, there are material facts in dispute as to whether the failure to conduct an earlier home study, or to expedite the home

study that was conducted, caused G.B. to be in the Khaleel home at the time he was allegedly killed. The Individual State Defendants accordingly have failed to show there is no dispute of material fact as to whether Defendants Oase and Desmond breached a duty of care owed to G.B. and whether that breach caused his death.

## CONCLUSION

The Individual State Defendants have failed to show there is no dispute of material fact as to any of the elements of Plaintiff's negligence claims against Defendants Oase and Desmond. As such, summary judgment is not appropriate, and the motion is denied as to these Defendants. Because Plaintiff has not cited any facts that would support Plaintiff's claim of negligence against the remaining Individual State Defendants, the motion is granted as to these Defendants.

Accordingly, **IT IS HEREBY ORDERED**:

**1.** The Individual State Defendants' Motion for and Memorandum in Support of Summary Judgment, **ECF No. 359**, is **GRANTED IN PART** and **DENIED IN PART** as follows:

***A.*** Plaintiff's claims for negligence against Defendants Mejia, Norton, Strus, Sullivan, Williams, Anderson, Blake, Kehmeier, Pullom, Stewart, Carrigan, and Steiner are **DISMISSED WITH PREJUDICE**.

//

*B.* The motion is denied as to Plaintiff' claims for negligence against Defendants Oase and Desmond.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to counsel for all parties.

**DATED** this 29th day of July 2020.

SALVADOR MENDOZA, JR.
United States District Judge